UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                      Case No. 18-CR-143

WAHEBA ISSA DAIS,
a/k/a Hind Salah Eddin,

        Defendant.

## PLEA AGREEMENT

1.      The United States of America, by its attorneys, Matthew D. Krueger, United States Attorney for the Eastern District of Wisconsin, Rebecca Taibleson, Assistant United States Attorney, and Jennifer Burke, Trial Attorney, National Security Division, United States Department of Justice, and the defendant, Waheba Issa Dais, a/k/a Hind Salah Eddin, individually and by attorney John Campion, pursuant to Rule 11 of the Federal Rules of Criminal Procedure, enter into the following plea agreement:

### CHARGES

2.      The defendant has been charged in a two-count indictment, which alleges violations of Title 18, United States Code, Section 2339B(a)(1).

3.      The defendant has read and fully understands the charges contained in the indictment. She fully understands the nature and elements of the crimes with which she has been charged, and those charges and the terms and conditions of the plea agreement have been fully explained to her by her attorney.

4.     The defendant voluntarily agrees to plead guilty to the following count set forth in full as follows:

### COUNT ONE

**THE GRAND JURY CHARGES THAT:**

*Between a date unknown, but no later than January 4, 2018, and continuing through June 13, 2018, in the state and Eastern District of Wisconsin,*

**WAHEBA ISSA DAIS,**
**a/k/a Hind Salah Eddin,**

*knowingly attempted to provide "material support and resources," as that term is defined in Title 18, United States Code, Section 2339A(b)(1), to wit, services, including expert advice and assistance, to a foreign terrorist organization, namely, the Islamic State of Iraq and al-Sham ("ISIS"), which at all relevant times was designated by the Secretary of State as a foreign terrorist organization pursuant to Section 219 of the Immigration and Nationality Act, knowing that ISIS was a designated foreign terrorist organization, that ISIS engages and has engaged in terrorist activity, and that ISIS engages and has engaged in terrorism.*

*All in violation of Title 18, United States Code, Section 2339B(a)(1).*

5.     The defendant acknowledges, understands, and agrees that she is, in fact, guilty of the offense described in paragraph 4. The parties acknowledge and understand that if this case were to proceed to trial, the government would be able to prove the following facts beyond a reasonable doubt. The defendant admits that these facts are true and correct and establish her guilt beyond a reasonable doubt:

   a. The Islamic State, also known as the Islamic State of Iraq and the Levant (ISIL), the Islamic State of Iraq and al'Sham (ISIS), the Islamic State of Iraq and Syria (ISIS), ad-Dawla al'Islamiyya fi al-'Iraq wa-sh-Sham, Daesh, and Dawla al Islamiya (hereinafter referred to as "ISIS"), is a Foreign Terrorist Organization Under Section 219 of the Immigration and Nationality Act and Specifically Designated Global Terrorist under section 1(b) of Executive Order 13224.

b. Waheba Issa Dais, a/k/a Hind Salah Eddin, is a lawful permanent resident of the United States who most recently resided in Cudahy, Wisconsin. Beginning by at least January of 2018, Dais used multiple social media platforms and hacked social media accounts to promote ISIS ideology, recruit adherents to ISIS, collect information on how to make explosives and biological weapons and on how to conduct terrorist attacks, and distribute that information to individuals interested in conducting attacks on behalf of ISIS. Dais knew that ISIS was a designated foreign terrorist organization and had engaged and was engaging in terrorist activity and terrorism.

c. In order to support ISIS, Dais repeatedly hacked into Facebook accounts, taking them over from unwitting victims and changing the profile picture, friends list, and display name, typically choosing a new display name that was a variant of "Hind Salah Eddin." Those accounts included Facebook accounts with User IDs (UIDs) ending in 1813, 4063, 2942, and 6059. After taking over those accounts, she regularly accessed them from Internet Protocol (IP) addresses that resolved to Dais's residence in Cudahy.

d. Dais has pledged her allegiance to ISIS on numerous occasions. For example, on or about February 10, 2018, Dais (using Facebook UID ending in 4063) wrote on her Facebook wall a post entitled "#Renewal of the pledge of allegiance one more time." Dais wrote, "I pledge allegiance to Ameer al Mumineen [the commander of the faithful] Ibrahim al-Husaini al-Qarashi, [Abu Bakir al-Baghdadi] to listen and obey in what is desirable and undesirables and in times of hardship and prosperity, and to endure being discriminated against and to not dispute the orders of those in charge, unless I witness a clear apostasy, for which Allah has shown me a clear proof, and Allah is my witness." In response to this post, seventeen of her friends commented pledging their allegiance to ISIS as well. And on or about February 12, 2018, Dais (using Facebook UID ending in 4063) posted on her Facebook wall, "#Caution. When I publish any statement I completely believe in it. I was and I continue to be on the doctrine of the Islamic State."

e. Dais also engaged in Facebook conversations with others in which she proclaimed her loyalty to ISIS. For example, on or about January 7, 2018, Dais (using Facebook UID ending in 1813) and another self-proclaimed ISIS supporter, AK, discussed their allegiance to ISIS and traveling to join ISIS. Dais informed AK that an ISIS military trainer in Raqqa, Syria, was trying to assist her in getting to Syria via Turkey. Dais told AK that she wanted to leave America, but that if she tried to leave she would be arrested for "conspiracy to join."

f. Dais used social media on multiple occasions to promote ISIS and its terrorist agenda and to attempt to recruit others to join ISIS and to commit attacks on behalf of ISIS. On or about January 30, 2018, an undercover employee (UCE) identified the Facebook account with UID ending in 4063 as one operated by Dais. The UCE sent a friend request to that account and it was accepted that day. The UCE then was able to view the Facebook wall of UID ending in 4063. The UCE noted that DAIS had posted the following in Arabic: "#Attention to the non-#supporters brothers: I accepted your friend requests hoping that Allah will guide at least one of you [to become a supporter]."

3

g. On or about February 24, 2018, Dais (using Facebook UID ending in 2942) posted a link to a social media channel entitled, "Khilafah Ray for Supporters Group." Khilafah refers to the Caliphate, also known as ISIS. The UCE visited the group on February 26, 2018, and noted that the page had multiple voice messages posted by Dais's social media account @ISWarrior which consisted of Jihadi songs and speeches by ISIS leaders. One of the messages encouraged ISIS supporters who cannot travel to ISIS-controlled areas to conduct terrorist attacks in the countries where they reside.

h. Using Facebook account with UID ending in 4063, Dais communicated with Facebook user OG about an attack that OG was planning. On or about January 26, 2018, OG asked Dais if she knew about Sharia. Dais responded by stating that OG should ask the question and Dais would send it to an expert for an answer. OG stated that he would be traveling to France. He then said it would be better to die than rot in prison. He asked how he can take revenge for ISIS. He suggested running a car through people or shooting at people. He then asked how he would be judged by God after killing many people. Dais responded that she will send him an answer later. On or about January 27, 2018, Dais sent OG a link to another Facebook profile (belonging to SM) and told OG to talk to this individual, who would be beneficial to OG.

i. On or about January 28, 2018, OG and SM exchanged private Facebook messages. OG said he was a 25-year-old Algerian who had previously discussed plans with Dais to travel to France. He said he wanted to plan an operation in support of ISIS, so Dais suggested he talk to SM. SM then sent OG the following pledge to ISIS: "Renewal of the pledge of allegiance, we are renewing the pledge of allegiance to Sheikh Abu Bakr Al-Bughdadi [sic] to obey him in everything, not to go against his will, not to flee during the fight, not to deny the religion of God and God is our witness." OG requested weapons and brothers to help with his attack. SM reminded OG that the work is individual. On or about January 30, 2018, OG sent Dais a message saying that Dais is really knowledgeable.

j. Dais also distributed information about explosives and biological weapons on Facebook and other social media platforms, in the form of videos and conversations about bomb-making and biological weapons materials. In particular, Dais used Facebook UID ending in 1813 to distribute information on how to build explosives and biological weapons for use by people who want to commit violent acts in the name of ISIS.

k. For example, on or about January 8, 2018, Dais posted a video on her Facebook page with UID ending in 1813. The video is a presentation from "Sawt al-Jihad" (translated as "The Voice of Jihad") and entitled "Explosive Belt/Vest." The video purports to provide step-by-step instructions on how to make an explosive belt and then demonstrates the effect of the bomb when it explodes. Audio in the background plays a chant in support of Jihad. On or about January 11, 2018, Dais posted another video on the Facebook page with UID ending in 1813, entitled, "The Practical Training in the Making of Ammonium Nitrate." The video purports to provide step-by-step instructions on how to make Ammonium Nitrate. Also on or about January 11, 2018, Dais posted another video on the Facebook page with UID ending in 1813,

4

entitled "The Practical Training in the Making of TNT." The video purports to provide step-by-step instructions on how to make TNT. Audio in the background plays a chant in support of jihad.

l. Dais continually sought to collect information on the best explosives and biological weapons techniques in order to pass this information on to would-be ISIS attackers. For example, on or about January 8, 2018, Dais used Facebook UID ending in 1813 to communicate with a Facebook user, AO, about explosive vests. AO told Dais that ISIS made a safer and more reliable explosive belt. AO explained that they do not use electronic detonators because they are dangerous and may explode prematurely, and instead suggested a grenade with a fuse. Dais asked if AO had any videos or written instructions that he could share with her. AO then began to discuss plans to kill Jews overseas. At that point, Dais suggested that AO not discuss such topics on Facebook due to the risk of surveillance.

m. On or about January 9, 2018, Dais (using Facebook UID ending in 1813) had a detailed conversation with AK about substances used to create bombs. Specifically, Dais and AK discussed how to acquire substances like nitric acid or ammonium nitrate, which could be used to make bombs. AK informed Dais that Ammonium Nitrate needs to be extracted from fertilizer because it is sold in large quantities to land owners. He recommended that this would make a good security cover. If asked questions, AK suggested that Dais say she does not understand chemicals but is merely a farmer.

n. On or about March 2, 2018, the UCE and Dais exchanged messages, with Dais using the Facebook account with UID ending in 2942. The UCE told Dais that he/she could no longer stand living in the land of the infidel. The UCE stated he/she constantly clashed with colleagues and felt that government spies were everywhere. Dais advised the UCE to plan and not to leak any information, to stay away from others, not to discuss his/her ideas with others, and to secure the UCE's social media account. Dais emphasized that total secrecy is the most important thing and that the UCE must take time in planning, choosing a target, and studying it well from all aspects, even if it takes months.

o. Dais suggested potential targets for attacks to the UCE, such as street festivals and celebrations in the summer, or churches. Dais also advised that the attack should be something that would devastate and kill more than one person. Further, she said, "Learn how to make bombs and explosive belts as a preparation process. They've been talking about this for months." After the UCE said he/she has no experience making weapons or explosives, Dais said, "No problem, making bombs is easy, and you can also start with poisons. I have a [social media] Channel you may benefit from." She further said, "I advise you to use poisons first," and then she again recommended her channel as a place to find an encyclopedia of poisons. Dais told the UCE to let her know if the UCE needed help. She said the easiest poison to make is Ricin, which she claimed is very effective. Dais then sent a link to the social media channel and said, "Lessons in making explosives and everything related to Lone Wolves, may Allah make us beneficial." Dais then asked, "Remember Boston Marathon bombing?" The UCE responded affirmatively, and Dais said, "It was very easy to make. All it needs is a pressure cooker, shrapnel and explosives. Join my

5

channel and research." The UCE asked if there were any poison recipes Dais could send to the UCE, and Dais responded, "Yes. I will send you the poison of Ricin for it is easier, more effective, and cannot be traced, even if the person dies, it cannot be found in the body. All you need is just two items." Dais then said, "Castor seeds and Acetone." (Ricin is a biological toxin made from the castor bean.) The UCE and Dais then exchanged email addresses.

p. On or about May 2, 2018, the UCE and Dais again exchanged private messages via Facebook. The UCE asked Dais about her social media channel entitled "Shu'a' Al-Khilafah for lone wolves." Al-Khilafah refers to the Caliphate, or ISIS. Dais responded by providing a new link to a social media channel and stating that the link is not publicly available to members but rather just to the administrators. The UCE's review of the channel revealed that it was directed to "lone wolves" who are making poisons, explosives, weapons, and silencers. The channel had 89 members. The UCE obtained 92 documents from the channel, all of which had titles relating to explosives, guns, attack planning, and target selection.

q. On or about May 3, 2018, the UCE sent a private message to Dais via Facebook account UID ending in 2186. The UCE said that he/she had downloaded the Ricin file from Dais's social media channel. Dais said, "Good. May Allah make you successful. It's easy to make but remember to be cautious." In discussing potential targets, Dais suggested a government post or water reservoirs.

r. On or about May 11, 2018, Dais (using Facebook UID ending in 2942) communicated with Facebook user EAR. EAR told Dais, "I am in need of a way to build explosives by using agricultural fertilizer." Dais replied, "Participate in my channel about explosives," and then provided a link to her channel entitled "The ray of the Khilafa- Explosives: Lone Wolves." The summary included with the link described the channel as providing "[l]essons in manufacturing of explosives and everything regarding Lone Wolves." EAR said that he would like to "build a bomb that can uproot a whole house. I am confused on which one to pick, and don't know how to formulate in grams of explosives and how to make it powerful." Dais advised EAR that he needed to "start with a small amount, meaning don't make the whole thing at once. You have to experiment with small quantities and then make it bigger." EAR thanked Dais for her advice.

This information is provided for the purpose of setting forth a factual basis for the plea of guilty. It is not a full recitation of the defendant's knowledge of, or participation in, this offense.

## PENALTIES

6. The parties understand and agree that the offense to which the defendant will enter a plea of guilty carries the following maximum term of imprisonment and fine: 20 years and $250,000. The count also carries a mandatory special assessment of $100 and a maximum life term of supervised release.

6

7. The defendant acknowledges, understands, and agrees that she has discussed the relevant statutes as well as the applicable sentencing guidelines with her attorney.

## DISMISSAL OF REMAINING COUNT

8. The government agrees to move to dismiss the remaining count of the indictment at the time of sentencing.

## ELEMENTS

9. The parties understand and agree that in order to sustain the charge of attempting to provide material support or resources to a foreign terrorist organization as set forth in count one, the government must prove each of the following propositions beyond a reasonable doubt:

> First, the defendant knowingly attempted to provide material support or resources to a foreign terrorist organization;
> Second, the defendant knew that the organization was a designated terrorist organization, or that the organization had engaged or was engaging in terrorist activity or terrorism; and
> Third, one of the following jurisdictional requirements is satisfied:
>
> (a) The defendant is a national of the United States, a permanent resident alien, or a stateless person whose habitual residence is the United States;
> (b) After the conduct required for this offense occurred, an offender was brought back into the United States or found in the United States;
> (c) The offense occurred in whole or in part within the United States;
> (d) The offense occurred in or affected interstate or foreign commerce; or
> (e) An offender aided or abetted any person over whom jurisdiction exists in committing an offense under this statute or conspired with any person over whom jurisdiction exists to commit an offense under this statute.

## SENTENCING PROVISIONS

10. The parties agree to waive the time limits in Fed. R. Crim. P. 32 relating to the presentence report, including that the presentence report be disclosed not less than 35 days before the sentencing hearing, in favor of a schedule for disclosure, and the filing of any objections, to be established by the court at the change of plea hearing.

7

11. The parties acknowledge, understand, and agree that any sentence imposed by the court will be pursuant to the Sentencing Reform Act, and that the court will give due regard to the Sentencing Guidelines when sentencing the defendant.

12. The parties acknowledge and understand that prior to sentencing the United States Probation Office will conduct its own investigation of the defendant's criminal history. The parties further acknowledge and understand that, at the time the defendant enters a guilty plea, the parties may not have full and complete information regarding the defendant's criminal history. The parties acknowledge, understand, and agree that the defendant may not move to withdraw the guilty plea solely as a result of the sentencing court's determination of the defendant's criminal history.

## Sentencing Guidelines Calculations

13. The defendant acknowledges and understands that the sentencing guidelines recommendations contained in this agreement do not create any right to be sentenced within any particular sentence range, and that the court may impose a reasonable sentence above or below the guideline range. The parties further understand and agree that if the defendant has provided false, incomplete, or inaccurate information that affects the calculations, the government is not bound to make the recommendations contained in this agreement.

## Relevant Conduct

14. The parties acknowledge, understand, and agree that pursuant to Sentencing Guidelines Manual § 1B1.3, the sentencing judge may consider relevant conduct in calculating the sentencing guidelines range, even if the relevant conduct is not the subject of the offense to which the defendant is pleading guilty.

### Base Offense Level

15. The parties agree to recommend to the sentencing court that the applicable base offense level for the offense charged in count one is 26 under Sentencing Guidelines Manual § 2M5.3(a) and § 2X1.1(a).

### Specific Offense Characteristics - Attempt

16. The parties acknowledge and understand that the government will recommend to the sentencing court that no downward adjustment is appropriate under Sentencing Guidelines Manual § 2X1.1(b)(1) for the offense charged in count one, because the defendant completed all the acts the defendant believed necessary for successful completion of the substantive offense.

### Victim-Related Adjustments

17. The parties agree to recommend to the sentencing court that a twelve-level increase for a felony that involved or was intended to promote a federal crime of terrorism is applicable under Sentencing Guidelines Manual § 3A1.4(a).

18. The parties agree to recommend to the sentencing court that the defendant's criminal history category from Sentencing Guidelines Manual Chapter Four shall be Category VI because the offense charged in count one is a felony that involved or was intended to promote a federal crime of terrorism under Sentencing Guidelines Manual § 3A1.4(b).

### Acceptance of Responsibility

19. The government agrees to recommend a two-level decrease for acceptance of responsibility as authorized by Sentencing Guidelines Manual § 3E1.1(a), but only if the defendant exhibits conduct consistent with the acceptance of responsibility. In addition, if the court determines at the time of sentencing that the defendant is entitled to the two-level reduction under § 3E1.1(a), the government agrees to make a motion recommending an additional one-

9

level decrease as authorized by Sentencing Guidelines Manual § 3E1.1(b) because the defendant timely notified authorities of her intention to enter a plea of guilty.

### Sentencing Recommendations

20. Both parties reserve the right to provide the district court and the probation office with any and all information which might be pertinent to the sentencing process, including but not limited to any and all conduct related to the offense as well as any and all matters which might constitute aggravating or mitigating sentencing factors.

21. Both parties reserve the right to make any recommendation regarding the fine to be imposed; the length of supervised release and the terms and conditions of the release; the defendant's custodial status pending the sentencing; and any other matters not specifically addressed by this agreement.

22. The government agrees to recommend a sentence within the applicable sentencing guideline range, as determined by the court.

### Court's Determinations at Sentencing

23. The parties acknowledge, understand, and agree that neither the sentencing court nor the United States Probation Office is a party to or bound by this agreement. The United States Probation Office will make its own recommendations to the sentencing court. The sentencing court will make its own determinations regarding any and all issues relating to the imposition of sentence and may impose any sentence authorized by law up to the maximum penalties set forth in paragraph 6 above. The parties further understand that the sentencing court will be guided by the sentencing guidelines but will not be bound by the sentencing guidelines and may impose a reasonable sentence above or below the calculated guideline range.

24. The parties acknowledge, understand, and agree that the defendant may not move to withdraw the guilty plea solely as a result of the sentence imposed by the court.

## FINANCIAL MATTERS

25. The defendant acknowledges and understands that any and all financial obligations imposed by the sentencing court are due and payable in full upon entry of the judgment of conviction. The defendant further understands that any payment schedule imposed by the sentencing court shall be the minimum the defendant is expected to pay and that the government's collection of any and all court imposed financial obligations is not limited to the payment schedule. The defendant agrees not to request any delay or stay in payment of any and all financial obligations. If the defendant is incarcerated, the defendant agrees to participate in the Bureau of Prisons' Inmate Financial Responsibility Program, regardless of whether the court specifically directs participation or imposes a schedule of payments.

### Special Assessment

26. The defendant agrees to pay the special assessment in the amount of $100 prior to or at the time of sentencing.

## DEFENDANT'S WAIVER OF RIGHTS

27. In entering this agreement, the defendant acknowledges and understands that she surrenders any claims she may have raised in any pretrial motion, as well as certain rights which include the following:

   a. If the defendant persisted in a plea of not guilty to the charges against her, she would be entitled to a speedy and public trial by a court or jury. The defendant has a right to a jury trial. However, in order that the trial be conducted by the judge sitting without a jury, the defendant, the government and the judge all must agree that the trial be conducted by the judge without a jury.

   b. If the trial is a jury trial, the jury would be composed of twelve citizens selected at random. The defendant and her attorney would have a say in who the jurors would be by removing prospective jurors for cause where actual bias or other disqualification is shown, or without cause by exercising peremptory challenges. The jury would have to agree unanimously before it could return a verdict of guilty. The court would instruct the jury that the defendant is presumed innocent until such time, if ever, as the government

11

establishes guilt by competent evidence to the satisfaction of the jury beyond a reasonable doubt.

    c.    If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all of the evidence, whether or not he was persuaded of defendant's guilt beyond a reasonable doubt.

    d.    At such trial, whether by a judge or a jury, the government would be required to present witnesses and other evidence against the defendant. The defendant would be able to confront witnesses upon whose testimony the government is relying to obtain a conviction and she would have the right to cross-examine those witnesses. In turn the defendant could, but is not obligated to, present witnesses and other evidence on her own behalf. The defendant would be entitled to compulsory process to call witnesses.

    e.    At such trial, defendant would have a privilege against self-incrimination so that she could decline to testify and no inference of guilt could be drawn from her refusal to testify. If defendant desired to do so, she could testify on her own behalf.

28.    The defendant acknowledges and understands that by pleading guilty she is waiving all the rights set forth above. The defendant further acknowledges the fact that her attorney has explained these rights to her and the consequences of her waiver of these rights. The defendant further acknowledges that as a part of the guilty plea hearing, the court may question the defendant under oath, on the record, and in the presence of counsel about the offense to which the defendant intends to plead guilty. The defendant further understands that the defendant's answers may later be used against the defendant in a prosecution for perjury or false statement.

29.    The defendant acknowledges and understands that she will be adjudicated guilty of the offense to which she will plead guilty and thereby may be deprived of certain rights, including but not limited to the right to vote, to hold public office, to serve on a jury, to possess firearms, and to be employed by a federally insured financial institution.

30.    The defendant knowingly and voluntarily waives all claims she may have based upon the statute of limitations, the Speedy Trial Act, and the speedy trial provisions of the Sixth

Amendment. The defendant agrees that any delay between the filing of this agreement and the entry of the defendant's guilty plea pursuant to this agreement constitutes excludable time under the Speedy Trial Act.

### Further Civil or Administrative Action

31. The defendant acknowledges, understands, and agrees that the defendant has discussed with her attorney and understands that nothing contained in this agreement, including any attachment, is meant to limit the rights and authority of the United States of America or any other state or local government to take further civil, administrative, or regulatory action against the defendant, including but not limited to any listing and debarment proceedings to restrict rights and opportunities of the defendant to contract with or receive assistance, loans, and benefits from United States government agencies.

### MISCELLANEOUS MATTERS

32. The defendant recognizes that pleading guilty may have consequences with respect to the defendant's immigration status if the defendant is not a citizen of the United States. Under federal law, a broad range of crimes are removable offenses. Removal and other immigration consequences are the subject of a separate proceeding, and the defendant understands that no one, including the defendant's attorney or the sentencing court, can predict to a certainty the effect of the defendant's conviction on the defendant's immigration status. The defendant nevertheless affirms that the defendant wants to plead guilty regardless of any immigration consequences.

### GENERAL MATTERS

33. The parties acknowledge, understand, and agree that this agreement does not require the government to take, or not to take, any particular position in any post-conviction motion or appeal.

13

Case 2:18-cr-00143-PP   Filed 03/27/19   Page 13 of 16   Document 26

34. The parties acknowledge, understand, and agree that this plea agreement will be filed and become part of the public record in this case.

35. The parties acknowledge, understand, and agree that the United States Attorney's office is free to notify any local, state, or federal agency of the defendant's conviction.

## EFFECT OF DEFENDANT'S BREACH OF PLEA AGREEMENT

36. The defendant acknowledges and understands if she violates any term of this agreement at any time, engages in any further criminal activity prior to sentencing, or fails to appear for sentencing, this agreement shall become null and void at the discretion of the government. The defendant further acknowledges and understands that the government's agreement to dismiss any charge is conditional upon final resolution of this matter. If this plea agreement is revoked or if the defendant's conviction ultimately is overturned, then the government retains the right to reinstate any and all dismissed charges and to file any and all charges which were not filed because of this agreement. The defendant hereby knowingly and voluntarily waives any defense based on the applicable statute of limitations for any charges filed against the defendant as a result of her breach of this agreement. The defendant understands, however, that the government may elect to proceed with the guilty plea and sentencing.

## VOLUNTARINESS OF DEFENDANT'S PLEA

37. The defendant acknowledges, understands, and agrees that she will plead guilty freely and voluntarily because she is in fact guilty. The defendant further acknowledges and agrees that no threats, promises, representations, or other inducements have been made, nor agreements reached, other than those set forth in this agreement, to induce the defendant to plead guilty.

This Page Left Intentionally Blank.

## ACKNOWLEDGMENTS

I am the defendant. I am entering into this plea agreement freely and voluntarily. I am not now on or under the influence of any drug, medication, alcohol, or other intoxicant or depressant, whether or not prescribed by a physician, which would impair my ability to understand the terms and conditions of this agreement. My attorney has reviewed every part of this agreement with me and has advised me of the implications of the sentencing guidelines. I have discussed all aspects of this case with my attorney and I am satisfied that my attorney has provided effective assistance of counsel.

Date: 3/21/2017

WAHEBA ISSA DAIS, a/k/a Hind Salah Eddin
Defendant

I am the defendant's attorney. I carefully have reviewed every part of this agreement with the defendant. To my knowledge, my client's decision to enter into this agreement is an informed and voluntary one.

Date: 3/21/2019

JOHN CAMPION
Attorney for Defendant

For the United States of America:

Date: 3-27-2019

MATTHEW D. KRUEGER
United States Attorney

Date: 3/27/19

REBECCA TAIBLESON
Assistant United States Attorney

Date: 3/27/19

~~JOLIE ZIMMERMAN~~ JENNIFER BURKE
Trial Attorney, Counterterrorism Section
National Security Division
United States Department of Justice

16